CHARLES GRAHAM JOHNSON, )
)
                Plaintiff, )
)
v. )      **ORDER**
)
CRICKET COUNCIL USA, INC., and )
MOHAMMED QURESHI, )
)
                Defendants. )

On February 7, 2023, Charles Graham Johnson ("Johnson" or "plaintiff") filed an action against Cricket Council USA, Inc. and Mohammed Qureshi (collectively, "defendants") in Cumberland County Superior Court [D.E. 3-2]. On March 6, 2023, defendants removed the action to this court based on diversity jurisdiction [D.E. 3]. On March 13, 2023, defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted [D.E. 12]. See Fed. R. Civ. P. 12(b)(6). On April 3, 2023, Johnson filed an amended complaint [D.E. 14].

On May 12, 2023, defendants moved to dismiss Johnson's amended complaint [D.E. 19] and filed a memorandum in support [D.E. 20]. See Fed. R. Civ. P. 12(b)(6). On June 2, 2023, Johnson responded in opposition [D.E. 21]. As explained below, the court grants in part defendants' motion to dismiss [D.E. 19] and dismisses Johnson's request for a declaratory judgment, Unfair and Deceptive Trade Practices Act ("UDTPA") claim, and request that the court pierce the corporate veil.

I.

On April 13, 2021, Johnson and Cricket Council USA, Inc. entered into a real property contract (the "Agreement") for the purchase and sale of 69.94 acres of land in Fayetteville, North

Carolina for $1,259,460.00. See Am. Compl. [D.E. 14-1] ¶¶ 4, 11. The Agreement defined the "Contract Date" as the date when the "Agreement ha[d] been fully executed by both Buyer and Seller." Id. at ¶ 14. Thus, the contract date was April 13, 2021. Id. The Agreement defined the "Examination Period" as "the period beginning on the first day after the Contract Date and extending through 5:00 pm (based upon time at the locale of the Property) on 90 business days from the contract date." Id. at ¶ 13. The Agreement stated that "Buyer may extend [the Examination Period] up to three 30 day extensions, upon each extension buyer will deposit an additional $2,500 non refundable." Id. And the Agreement noted that "**TIME IS OF THE ESSENCE AS TO THE EXAMINATION PERIOD.**" Id. The Agreement defined the "Closing Date" as 30 days after the end of the Examination Period upon approval from the city. See id. at ¶ 12. The Agreement did not define "approval from the city," and the Closing Date section did not include a "time is of the essence" provision. See id.

In October 2021, defendants prepared an Amendment (the "Amendment") to the Agreement, and their agents presented the Agreement to Johnson. See id. at ¶¶ 17, 19. When Johnson received the Amendment, he was not represented by an agent or attorney. See id. at ¶ 19. The Amendment redefined the Closing Date to be "on or before the day which is Thirty (30) days after Buyer obtains all Governmental and Municipal Permits including but not limited to Master Site Plan and Building Construction Plans that are required to build Multifamily Units including Commercial Development and Sports Fields on the Subject Land." Id. at ¶ 22.

According to Johnson, on November 15, 2021, he executed the Amendment but the Amendment was dated October 28, 2021. See id. at ¶ 17. Johnson alleges that the Amendment is unenforceable for various reasons, including a lack of consideration, the closing date is so vague and ambiguous as to render it meaningless, the Agreement is not binding on defendants, and because

2

defendants failed to properly exercise the three 30-day extensions under the Agreement. See id. at ¶¶ 21–24.

Defendants respond that Cricket Council USA, Inc. extended the examination period three times before seeking to amend the Agreement. See [D.E. 20] 9. According to defendants, the extensions continued the examination period until Thursday, November 18, 2021. Moreover, 30 days from the end of that examination period was Saturday, December 18, 2021, which was then extended until the next business day, Monday, December 20, 2021. See id. at 3. Defendants also contend that when Cricket Council USA, Inc. signed the Amendment, Cricket Council USA, Inc. paid $7,500.00 in nonrefundable extension funds in escrow to Johnson. See id. at 4. On January 23, 2023, Johnson notified defendants that he was terminating the Agreement. See Am. Compl. ¶ 28.

II.

To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (quotation omitted); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must

3

"nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

As for Johnson's request for declaratory judgment against Cricket Council USA, Inc., the Declaratory Judgment Act permits a court to "declare the rights and other legal relations of any interested party seeking such declaration" when there is "a case of actual controversy within [the court's] jurisdiction." 28 U.S.C. § 2201. In determining whether an actual controversy exists, the court focuses on whether the parties have a real controversy with adverse legal interests and whether the dispute is hypothetical or abstract. See Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979). A court has subject-matter jurisdiction over a claim for declaratory relief if "(1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." Volvo Constr. Equip. N. Am., Inc. v. CLM

4

Equip. Co., 386 F.3d 581, 592 (4th Cir. 2004) (quotations omitted); see 28 U.S.C. § 2201; Steffel v. Thompson, 415 U.S. 452, 458 (1974).

Johnson's request for declaratory relief asks this court to determine whether the Agreement is enforceable and whether Johnson is entitled to damages or other relief under the Agreement. Johnson contends that Cricket Council USA, Inc. breached the Agreement, Johnson's termination was valid, and Johnson is entitled to damages. Defendants respond that Cricket Council USA, Inc. did not breach the Agreement, Johnson breached the Agreement by terminating it invalidly, and defendants are entitled to have the court dismiss Johnson's amended complaint. Here, the parties have an actual dispute. Nonetheless, declaratory relief is inappropriate because the dispute does not require the court to clarify the parties' ongoing relationship. The alleged breach of contract already occurred, and the dispute concerns the alleged breach and damages. Thus, the court dismisses Johnson's request for declaratory relief. See Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n, 352 F. Supp. 3d 508, 520 (E.D.N.C. 2016); Hanback v. DRHI, Inc., 94 F. Supp. 3d 753, 758–59 (E.D. Va. 2015); Galvatubing, Inc. v. Commonwealth Aluminum Tube Enters., LLC, No. 1:09CV3, 2009 WL 962254, at *7 (W.D.N.C. Apr. 7, 2009) (unpublished); Hipage Co. v. Access2Go, Inc., 589 F. Supp. 2d 602, 615 (E.D. Va. 2008).

As for Johnson's breach of contract claim against Cricket Council USA, Inc., Johnson must plausibly allege "the existence of a contract between plaintiff and defendant, the specific provisions breached, the facts constituting the breach, and the amount of damages resulting to plaintiff from such breach." RGK, Inc. v. U.S. Fid. & Guar. Co., 292 N.C. 668, 675, 235 S.E.2d 234, 238 (1977); Cantrell v. Woodhill Enters., Inc., 273 N.C. 490, 497, 160 S.E.2d 476, 481 (1968). Johnson alleges that Cricket Council USA, Inc. breached the Agreement by "(1) failing to pay the additional earnest money deposits required to extend the original Examination Period; (2) failing to close within the

5

time allowed thereby, or within a commercially reasonable time under the circumstances; and (3) such other acts and omissions as may be shown at trial." Am. Compl. ¶ 34.

As for Johnson's allegations about earnest money deposits, Johnson plausibly alleges that Cricket Council USA, Inc. did not properly pay to extend the examination period of the Agreement. See id. at ¶ 16. Specifically, Johnson alleges that the Agreement required Cricket Council USA, Inc. to pay Johnson $2,500 before each 30-day extension of the examination period. See id. Johnson also alleges that the Agreement required a $2,500 payment as consideration for the extension and that Cricket Council USA, Inc. did not make the necessary $2,500 payment for any extension of the examination period. See id. at ¶¶ 16, 21, 24. Johnson has plausibly alleged a breach of contract claim against Cricket Council USA, Inc. See, e.g., Reynolds-Douglass v. Terhark, 381 N.C. 477, 481, 873 S.E.2d 552, 556 (2022).

As for Johnson's allegations that Cricket Council USA, Inc. failed to close in a reasonable time, absent a "time is of the essence" clause, the parties to a real property purchase agreement are allowed a "reasonable time after the date set for closing to complete performance." Ball v. Maynard, 184 N.C. App. 99, 102, 645 S.E.2d 890, 893 (2007); see Dishner Devs., Inc. v. Brown, 145 N.C. App. 375, 378, 549 S.E.2d 904, 906, aff'd, 354 N.C. 569, 557 S.E.2d 528 (2001) (per curiam). The Amendment states that Cricket Council USA, Inc. had 30 days to close after obtaining the necessary permits and approvals. See Am. Compl. ¶ 22. On January 23, 2023, when Johnson purported to terminate the Agreement, defendants argue that Cricket Council USA, Inc. had not obtained the necessary permits. See [D.E. 20] 13–14. Johnson, however, alleges that he had heard nothing from defendants about their efforts toward closing, did not know if Cricket Council USA, Inc. obtained any permits, and more than a year had passed between signing the Amendment and terminating the Agreement. See Am. Compl. ¶¶ 25–29. The parties dispute whether defendants told Johnson that

6

Cricket Council USA, Inc. would continue to honor the Agreement and whether defendants would soon close. Compare [D.E. 20] 13–14 with [D.E. 21] 11–12 and Am. Compl. ¶¶ 25–29. Johnson has plausibly alleged that Cricket Council USA, Inc. failed to close in a reasonable time. See, e.g., Red Apple Dev., LLC v. Rufus Rd. Partners, LLC, No. 3:19-cv-00157, 2022 WL 567844, at *6 (W.D.N.C. Feb. 24, 2022) (unpublished); Fletcher v. Jones, 314 N.C. 389, 390–91, 333 S.E.2d 731, 733–34 (1985).

As for Johnson's UDTPA claim against the defendants, a plaintiff must plausibly allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to the plaintiff. See Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 573 (E.D.N.C. 2019); Kelly v. Ga.-Pac., LLC, 671 F. Supp. 2d 785, 798 (E.D.N.C. 2009); SciGrip, Inc. v. Osae, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007). "[W]hether an act or practice is an unfair or deceptive practice . . . is a question of law for the court." Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000); see ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 123 (4th Cir. 2006).

A "mere breach of contract, even if intentional, is not an unfair or deceptive act under [the UDTPA]." Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006); see PCS Phosphate Co. v. Norfolk S. Co., 559 F.3d 212, 224 (4th Cir. 2009); Walker, 362 N.C. at 72, 653 S.E.2d at 399; Waddell v. U.S. Bank Nat'l Ass'n, 395 F. Supp. 3d 676, 684 (E.D.N.C. 2019); Gray, 352 N.C. at 75, 529 S.E.2d at 685; Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 61–62, 418 S.E.2d 694, 700 (1992). North Carolina law "does not permit a party to transmute a breach of contract claim into a . . . UDTPA claim . . . because awarding punitive or treble damages would destroy the parties' bargain." PCS Phosphate, 559 F.3d at 224; see Broussard

7

v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998). If substantial aggravating circumstances accompany a breach of contract, then those circumstances can create an UDTPA claim. Burrell v. Sparkkles Reconstruction Co., 189 N.C. App. 104, 111, 657 S.E.2d 712, 717 (2008); Branch Banking & Tr. Co., 107 N.C. App. at 62, 418 S.E.2d at 700; see Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989); United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981). Generally, such aggravating circumstances include some element of deception, such as forged documents, lies, or fraudulent inducements. See Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp., No. 16 CVS 217, 2017 WL 1148793, at *7 (N.C. Super. Ct. Mar. 27, 2017) (unpublished) (collecting cases).

Johnson alleges that defendants had superior bargaining power, that Johnson had no experience with real estate, that defendants caused Johnson to "enter into the Amendment in an unfair and deceptive manner," and that defendants disguised their intentions during contract negotiations. See Am. Compl. ¶¶ 19–21. Johnson also alleges upon information and belief that defendants

> made false representations to Plaintiff or concealed material facts from Plaintiff concerning: (1) their true intentions with regard to Plaintiff's property; (2) their true intentions with regard to whether they would actually close on the purchase of Plaintiff's property; (3) their acts and omissions concerning moving forward with obtaining Government and Municipal Permits and Construction Plans concerning the Subject Property; (4) their ability to close on the Subject Property; and, (5) such other acts and omissions as may be shown at trial.

Id. at ¶ 39.

Johnson's allegations are conclusory and do not plausibly allege a UDTPA claim. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 554–63; Waddell, 395 F. Supp. 3d at 684–85; Rahamankhan Tobacco Enters. Pvt. Ltd. v. Evans MacTavish Agricraft, Inc., 989 F. Supp. 2d 471, 477–78

8

(E.D.N.C. 2013); Kelly, 671 F. Supp. 2d at 798-99; Bob Timberlake Collection, Inc., 176 N.C. App. at 41-42, 626 S.E.2d at 323. Thus, the court dismisses Johnson's UDTPA claim.

As for Johnson's request to pierce the corporate veil, the court must assess whether Johnson plausibly alleges sufficient facts that would, if believed, tend to establish the required elements to pierce the corporate veil under North Carolina's "instrumentality rule." State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 362 N.C. 431, 440, 666 S.E.2d 107, 113 (2008); Fischer Inv. Cap., Inc. v. Catawba Dev. Corp., 200 N.C. App. 644, 650-51, 689 S.E.2d 143, 147-48 (2009); see Green v. Freeman, 367 N.C. 136, 146, 749 S.E.2d 262, 271 (2013). In order to prevail under the instrumentality rule, the aggrieved party must establish three elements: "(1) stockholders' control of the corporation amount[s] to "complete domination" with respect to the transaction at issue; (2) stockholders' use of this control to commit a wrong . . . ; and (3) this wrong or breach of duty must be the proximate cause of the injury." State ex rel. Cooper, 362 N.C. at 441, 666 S.E.2d at 114.

Defendants contend that Johnson fails to plausibly allege these required elements. See [D.E. 20] 17. Johnson responds that he has sufficiently pled facts for the court to pierce Cricket Council USA, Inc.'s corporate veil. See [D.E. 21] 14.

In Fischer, the North Carolina Court of Appeals cited numerous factual allegations in the plaintiff's complaint that sufficiently pled a claim to pierce the corporate veil under the instrumentality rule's "control" element. See Fischer, 200 N.C. App. at 650-53, 689 S.E.2d at 147-49. To name a few, the plaintiff cited specific asset transfers used to subvert the corporate form, noted that the owner failed to file annual reports with the Secretary of State and otherwise comply with corporate formalities, and alleged that the actions of the owner left the corporation in question insolvent. Id., 689 S.E.2d at 147-49. The North Carolina Court of Appeals noted that these allegations addressed three of the four elements of control: "inadequate capitalization,"

9

"noncompliance with corporate formalities," and "complete domination and control of the corporation so that it has no independent identity." Id. at 653, 689 S.E.2d at 149.

Although the analysis of the control element does not depend on the presence or absence of any particular factor, Johnson's sole reliance on the factual allegations that Qureshi is the "sole or dominant owner of Cricket Council," "is the President of Cricket Council," and "exercises complete dominion and control over Cricket Council" does not suffice. See id. at 650–53, 689 S.E.2d at 147–49; cf. Am. Compl. ¶ 43. Without more facts indicating "complete domination, not only of finances, but of policy and business practice[s] . . . so that the corporate entity . . . had . . . no separate mind, will or existence of its own," Johnson's allegations are conclusory and do not plausibly support piercing the corporate veil. Fischer, 200 N.C. App. at 653, 689 S.E.2d at 149 (quotations omitted); see Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 554–63. Because Johnson's allegations fail under the first "control" element of the instrumentality rule, the court need not address if the breach of contract claim is within the "wrong[s]" contemplated by the second element or address proximate cause. Thus, the court dismisses Johnson's request to pierce the corporate veil.

III.

In sum, the court GRANTS IN PART defendants' motions to dismiss [D.E. 19], and DISMISSES WITHOUT PREJUDICE plaintiff's declaratory judgment, UDTPA, and piercing the corporate veil claims. The sole remaining claim is plaintiff's breach of contract claim against defendant Cricket Council USA, Inc. Mohammed Qureshi is DISMISSED WITHOUT PREJUDICE as a defendant. The parties SHALL engage in a court-hosted settlement conference with United States Magistrate Judge Robert B. Jones, Jr.

SO ORDERED. This 24 day of August, 2023.

 _/s/ J. Dever_
JAMES C. DEVER III
United States District Judge

11